Good afternoon, Your Honors. I'm Sally Hart, attorney for the appellant beneficiaries in this case with the Center for Medicare Advocacy and the Arizona Center for Disability Law. I'd like to reserve three minutes of time for rebuttal. You may do so. Watch the clock. Thank you. That's counting down, so when you get to whatever time you want to reserve, that'll help you. Okay. This case concerns the Medicare program, which provides health insurance for the elderly and disabled. In particular, it concerns local coverage rules that restrict services covered by Medicare. These rules are adopted by the private insurance companies that contract with Medicare to administer the Medicare program in states across the country. There are now more than 9,000 local coverage rules of this sort. The defendant's secretary requires its contractors to adopt local coverage rules under specific criteria for their content. In this case, the beneficiaries challenge the secretary's refusal to promulgate his local coverage rules criteria through notice and comment rulemaking. In other words, this comes down to whether we're talking about an interpretive procedural rule versus a substantive rule. Is that what we're talking about? Under the Administrative Procedures Act claim, yes, Your Honor. Under the Medicare Act claim, no, there's a somewhat different test for when a rule must be promulgated. But that is the test under the Administrative Procedure Act. And your argument here is that this is not an interpretive or procedural rule, but a substantive rule. That's correct. Help us sort out why that should be. Why is it a substantive rule rather than a procedural rule? Well, it's a substantive rule because it determines benefits to which people are entitled or the criteria for benefits. It is in conflict with the legislative rules that are applicable to Medicare benefits that establish entitlement to benefits of specific sorts, hospital services, physician services, et cetera, and only provide for those services, if they fall into those categories, not to be covered if they are not reasonable and necessary. That's the language in the statute. It's the language in the regulations that existed prior to the Secretary's use of these local coverage rules. And the criteria for the local coverage rules, as I will explain, are far more restrictive than the language of the statute. So they can't be merely interpretive. They certainly are not procedural because they actually have nothing to do with procedures. They are rules concerning substantive matters. Under your position, are you saying that the Secretary should have promulgated these as regulations or something less than a regulation? We are saying it should have been promulgated as regulations. Aren't these local coverage determinations different depending upon which contractor is working here? Like one contractor may be in New York, cover one thing, and one in California covers another. It is absolutely right. That's unfair, but they are different. Yes, they are. We are not asking that the rules themselves be promulgated as regulations. It's just the criteria for the rules that are spelled out now in the manual. They're, you know, the rules themselves are very long, complex. It would be a terrible administrative burden. But the criteria are not. They are simple. It would not be an administrative burden. And that's what this case is all about. You say there are 9,000 of these providers? There are 9,000 of the local coverage rules that have been adopted pursuant to the criteria. 9,000 sets or 9,000 rules? My understanding is it's the individual rules. So if you've got Provider X in Tucson, Arizona, and they've got LCDs, they might be different than somebody in El Paso? They very well might be. They might be the same. I mean, one of the things the local contractors do, I understand, is they exchange information with one another about their systems and have meetings, national meetings. So there may be definitely be patterns, but you are quite correct that they differ from area to area. Is the sort of heart of your argument that it's unfair to not tell someone what is required to obtain benefits and then deny them pointing to something they're not aware of? Yes, that is the heart of the argument. We feel that these criteria are so important, play such a role, that there should be public notice and comment about them. And that hasn't happened, although the Secretary has made several attempts in that direction. In 1987, published a notice of intent to promulgate a regulation. In 1989, published a proposed regulation, very lengthy, describing criteria for coverage of Medicare services. It hung around for ten years without anything happening, although it was critically received by the public and by the provider community. Then the Secretary withdrew the proposed rule, but decided in 2000, yes, they should have a proposed rule, so they published another notice of intent with criteria that they said they were considering. And then several years later, decided that they wouldn't go ahead with it again. So it's definitely something that they've admitted they should be doing, but it's proven to be difficult because the content is not acceptable. As I understand, a person who's covered here and denied coverage, or at least thinks he's covered and denied coverage, has a right to appeal, and then these LCDs are not binding upon whoever's under the appeals process, right? Well, it's a little bit more complicated than that. Yes, a beneficiary has a right to appeal. The rules are binding at the first stage of appeal, which is called review reconsideration. It's a paper review stage. And on the Part B side, they're also binding at the carrier hearing stage. If the individual pursues his or her claim up to the administrative law judge stage. That's where it's not binding. Like our client, Chris Erringer, did, it's not binding unless the individual has ‑‑ if this individual has a claim of $100 in controversy or less, or $500 in controversy or less on the Part B side, they have no further appeal. So for a substantial number of people, there is actually ‑‑ they are ultimately and finally binding. But most of these plaintiffs here have substantial medical bills, or they claim to have, right? Yes. $100. To a greater or lesser extent, yes, they are. They ‑‑ none of them were precluded from getting up to the ALJ stage because of the amount in controversy. Counsel, I'm looking at 1395HHC1. This is the provision that says, in the Federal Register, not less frequently, every three months, a list of all manual instructions, interpretive rules, statements of policy, and guidelines. Were these local coverage rules listed in accordance with this provision? I don't believe they were. I believe that provision would have applied to something different called national coverage rules. The local coverage rules are not published in that manner. How does one who is not inside HHS find out or locate a local coverage rule? Well, it's very difficult. If they are computer savvy, they might be able to find them on the website of the contractor. But that's a real part of the problem here. These are all kind of secret or at least very low visibility rules. The doctor might tell them about it. If the doctor knew, but in some of our clients' cases, the doctor doesn't. Are you telling us that HHS does not reveal these local coverage rules to anybody? Well, they could be revealed. Except they're contractors? They are. As I said, HHS is requiring them to be posted on the contractor's websites. So to the extent that there's compliance with that, they should now that should be a place where an individual, as I said, who's computer savvy could go. All right. So someone who is interested could find the rule by going to the contractor website? If they're good at it. Well, I mean, it's either there or it's not there. You are saying it's available? It's supposed to be available. Was it available in this case? Well, this case came about at an earlier point in time. I don't believe it was available at that time, but it might have been. And this client didn't know if it was, that that was a place where he could go. And, in fact, his physician didn't know about the rule. All right. How long does it take a person who's a claimant that gets denied to get to the administrative law judge? And then how long does it take us that these people are truly sick? It takes a whole lot longer than it should, I suppose. Well, Chris Erringer, our named plaintiff, was denied his benefits in 1999 and went through the appeals process. And in 2001, he got the decision from the administrative law judge saying his trigger point injections should have been covered under the standard in the Medicare statute. So that is a two-year case, which is not atypical. Did these rules change any prior policy? Yes, they did, Your Honor. The prior policy before 1994, when the secretary started using the local coverage rule system and first announced it in its manuals, private contractors that were making claims for services made decisions, except when there was a national coverage rule, and that's not involved here, on a case-by-case basis. So they'd look at the individual's service and they would decide whether it was under the exclusion for services that are not reasonable and necessary. Is this under regulation? It was in the claims determination regulations, yes, Your Honor. And your position is now that that regulation has, in fact, been amended by these LCDs, which are secret and not available and should have been promulgated? That is our position. That is our position. Do you want to reserve or? If those are the issues, we might as well hear from the government and then you can respond. Well, let me talk a little bit about the Medicare statute. Because I believe that we briefed the Administrative Procedure Act issue so extensively and the district court almost didn't look at the Medicare statute. We think because we placed the second in lineup in our argument, we didn't give it the recognition it deserved. We feel it's a very powerful argument. And, in fact, it's a much easier way for the court to resolve this issue than looking at the myriad of Administrative Procedure Act cases. Unfollow from the other? No. In other words, they're separate inquiries? They are separate and distinct inquiries, except the district court in this case didn't think so. The district court said he thought the Medicare Act provision was just like the APA provision, so he didn't really explore whether it would provide a stronger requirement for promulgation. The Medicare Act statute does contain specific language mandating promulgation of agency rules, requirements, and policies at 42 UAC Section 1395HH. It is broader than the similar requirement of the APA, as is shown in several ways. First of all, the APA had been in existence for many years and was applicable to the Medicare program when Congress in 1987 adopted this provision in the Medicare statute. So there would have been no reason at all for Congress to have adopted this provision if all they meant to do was reiterate the requirements of the APA. Secondly, the language of the provision in the Medicare statute itself is broader than the language in the Administrative Procedure Act. The Administrative Procedure Act requires promulgation of substantive rules. The Medicare Act requires promulgation of, and I'm quoting now, rules, requirements, and policies, instead of substantive rule. Furthermore, the language in the Medicare statute focuses specifically on the kind of rules that are at issue in this case. It talks about a rule that establishes or changes a substantive legal standard governing the scope of benefits. So it's very targeted to the kind of rule that we're looking at, the criteria for coverage rules. And if you look at the legislative history, it also shows that Congress did intend to tighten up the promulgation requirements for the Medicare rules. It talks in the legislative history about its feeling that the Secretary has had a history of ignoring the public notice and comment process. So the effect of this broader promulgation requirement applicable to Medicare program rules is to resolve any doubts that might exist concerning the requirements for local coverage rules. If they don't fall into the category of substantive rules in the Administrative Procedure Act, they certainly fall into the categories of rules to which the Medicare statute applies and requires promulgation. We, of course, do believe that the Administrative Procedure Act applies as well. The district court, we think, erred in its holding that the criteria were interpretive rather than substantive. There are three tests set out in the case law for when a rule is substantive instead of interpretive, and we think this case fits into all three of them. First of all, does the challenge policy change a prior legal standard? And the answer is yes, since, as we discussed earlier, the old regulations about claims processing and the statute itself has a different standard. It says the services are covered unless they are not reasonably necessary. And we've quoted the provisions in the criteria in the manuals in our brief, and I can go line by line with the Court again now or refer you to the brief, but they are far more specific and more restrictive. I'm going to ask what relief are you asking for here? If you win and it's decided that these are substantive rules and should have gone through the process, what happens to all these LCDs and where are we then? And for a period of time, they'll have to take a while to get some regulations, I suppose. That is what we think should happen. The consequence of a rule not being promulgated pursuant to the Administrative Procedure Act is that it can't have any force and effect. So the agency and its contractors would have to take a look at their local coverage rules to determine whether they were based on the unacceptable standard. If they were, I mean, certainly it could be easily remedied if the agency does what it has done several times in the past anyway and adopt a regulation. What difference will it make to your own particular client in this case? Well, my particular client, well, there are many, of course, but the lead client, Chris Erringer, lost services for two years because of the application of the local coverage determination that was invalid under the statute. Unfortunately ---- Why would it be any different if you published it instead of use it as an interpretable rule? If they actually adopted these standards, it would be the same. Our belief is that they would not be able to do that. The public comment, as I said before, has been very negative towards these standards. And I believe a different set of standards would be adopted, more in line with the provisions of the statute itself. Well, do you want to pause here and then save the remainder of your time so we can hear from the government and then you can respond to the government with your rebuttal  I will do that. All right. You may do so. We'll hear from Mr. Lev. Is that correct? Good afternoon, Your Honors, and may it please the Court. My name is Ori Lev. I'm with the Department of Justice, and I represent the defendant at police, Secretary of Health and Human Services, this afternoon. The narrow issue before the Court is whether the handful of provisions in the Program Integrity Manual that Medicare puts out that set forth the agency's interpretation of the Medicare Act's reasonable and necessary provision, whether those sections of the PIM, they're referred to in the briefs as Section 5.1 and what was Section 5.4, whether those sections of the manual constitute legislative rules subject to notice and comment, even though the Secretary has expressly not relied on his delegated legislative authority in issuing the rules, even though the Secretary does not hold out those manual provisions as having the force and effect of law, and even though those rules are not binding as rules of decision in the administrative appeals process, let alone in the federal courts, in determining whether a particular item or service is covered under the Medicare Act. In a perfect world, those seeking Medicare benefits would comply to the letter of the requirements of each individual provider, right? I'm not sure exactly what Your Honor is referring to. Well, somebody has a set of these local rules, these LCDs. And they cover some of the ebb and flow of what they will do in terms of when benefiting. It aids them in making a determination as to what's reasonable and necessary, right? Yes. I believe it aids the provider and beneficiary community as well, Your Honor. What LCDs are, and I'll refer to them as LCDs or local coverage determinations, just so when we talk about rules, we're talking about the PIM provisions. LCD says to the local medical community, the providers and the beneficiaries, these items and services either are or are not covered under this particular set of circumstances. In this clinical set of conditions, we will cover X. Under this set of conditions, we won't cover Y. And I want to emphasize, LCDs also can apply to grant benefits under a particular set of circumstances. They're not just intended to deny benefits. And what about the argument that these are secret? In other words, the public has no access to this information and there's no way of knowing what these rules are. Your Honor, they're absolutely not secret. First of all, they're developed in a very public way. And I'll refer you to the Program Integrity Manual. It's in the excerpt of record. Beginning at page 129, that's Chapter 13, Section 7 there talks about how the local coverage determinations themselves are developed. It requires that a draft LCD be published, that the public and the medical community have an opportunity to comment on it, that they be reviewed by carrier advisory committees or other committees that have beneficiary representatives on them. So before these LCDs are even adopted by a contractor, they have been publicly, you know, this informal notice and comment process has taken place. Second of all, the LCDs are all posted on every contractor's website must contain that contractor's local coverage determinations. And the Medicare website has all the LCDs of all the contractors posted on there. And third, the contractors strike me, and tell me if I'm wrong, they strike me as being a private entity. And whatever they publish might have a certain separate impact compared to something that's on an official government website. Are you saying that these are also on the website of the Medicare part of HHS? Yes, Your Honor. That is my understanding. And furthermore, as a result of a settlement entered into in this case with respect to claims that are not before the court, when a beneficiary's claim is denied based on a local coverage determination, that beneficiary is now informed that a local coverage determination was used in denying their claim, and that he or she can obtain a copy of that LCD by calling the 1-800 number listed on the form that tells them their claim was denied. And that was thanks to Ms. Hart's good efforts, we entered into that settlement. So they are far from secret. They are out there. They, in fact, provide transparency and consistency and efficiency to a system that has to administer millions, literally millions of claims every year. I guess from a practical standpoint, the patient doesn't look it up anyway. It's probably the physicians in the hospitals or other providers, right? I think that's – I suspect that's probably right, Your Honor. And that's why if you look at Section 7 of Chapter 13 of the PIM that talks about how these LCDs are promulgated, there's really a heavy emphasis on the provider community and the medical community being involved, both because they're the ones who are really going to know about it most likely, and, of course, because they are the medical experts, and they are going to provide medical advice and comment on these proposed rules as to whether or not particular items or services are reasonable and necessary for particular clinical circumstances. Is this a little unfair since you have all these different contractors and one might cover this procedure and another one might not? I don't think so, Your Honor. The Medicare system was intentionally established by Congress in such a way that the Secretary is authorized and was intended to contract with these private contractors. Private contractor means, you know, a blue cross, blue shield in a particular area, to take advantage of the expertise that these private contractors had before they established Medicare and to take account of the variations in the way medicine is practiced in this country. What might be reasonable and necessary in New York might not be reasonable and necessary in St. Louis. It depends on what kind of medical specialists there are, what's accepted in the local medical community. So it's not unfair. It is, in fact, exactly what Congress intended, which is that this program recognized the variation in medical practice in this country. And I would point out that Congress, when it amended the Medicare Act in 2000, made express reference to LCDs in Sections 521 and 522 of what we refer to as a bit by the Benefit Improvement Protection Act. It's cited in our briefs. It's found now in Section 1395FF of the statute. And it made reference to LCDs in two ways. First, it required a process for judicial review of individual LCDs, meaning that today if an individual beneficiary, such as Mr. Erringer, has a claim denied based on an LCD, he has two avenues of recourse. First, he can pursue the administrative appeals process. And, of course, the LCD is not binding after the first couple stages of that review. Separate and apart from that, and in addition to that, he can file a complaint challenging the local coverage determination with an ALJ and then appeal that ALJ's determination to the department and seek federal court review of the local coverage determination that was applied in his or her case. And, of course, the PIM provisions, and remember, that's what we're talking about. We're not talking about LCDs here. We're talking about these provisions that are set forth in the PIM. Those provisions that set forth the criteria, they aren't binding on the court when they review either a claim for benefits or whether or not a particular local coverage determination is appropriate. They don't set forth the rules of decision. A court looking at a claim for benefits or a challenge to an LCD is going to apply the statute's reasonable and necessary language. Now, to the extent that the Secretary's interpretation of that language as it's set forth in the manual is persuasive, the provisions would be entitled to some deference under Skidmore. But they're not entitled to Chevron deference because they don't have the force and effect of law. And so maybe this is precisely Ms. Hart's point, that if they did have the force and effect of law, that would benefit her client. Well, that may be so, Your Honor. But the point is it's up to the Secretary has no obligation to promulgate these particular criteria as legislative regulations having the force and effect of law. Well, let me ask you about this 1395HHC1, I think it was, was the provision. Are these LCDs listed there? Your Honor, I'm sure all the LCDs, I suspect the LCDs aren't listed there. Are not. I suspect they're not. But again, Your Honor, what's at issue in this case, plaintiffs have not challenged any LCD. Well, let me just read the language. The Secretary shall publish in the Federal Register and so forth a list of all manual instructions. Right. Mention manual instructions. The PIM provisions. That's the PIM provisions. Right. The sections of the manual that say contractors. These are the criteria you apply when you develop LCDs. Those parts of the manual. That's published under this statute. Well, I'm sure the manual is listed. All it requires is a list. Listed is a term of reference. I'm pretty sure that is correct, Your Honor. Now, again, plaintiffs aren't complaining about that. They're saying that those provisions should have been, they're not saying, well, they weren't listed in the Federal Register. I'm sure the program integrity manual is listed in the Federal Register. They're saying that those few sections of that manual had to be published by notice and comment rulemaking. And under this Court's precedence, specifically the Hemp Industries test, that is simply not the case. Well, I'm still stuck on the LCD here. Is it an interpretive rule? The LCD itself? Yeah. What is it? It seems to me that the choice is either it's a substantive or it's interpretive or procedural. I suppose that the LCD itself would be an interpretive rule, Your Honor. And whether a list of LCDs. Given the policy or guidelines of general applicability? You know, Your Honor, I'm not certain because, again, plaintiffs haven't challenged any LCDs. All they have focused their claim on is the provisions in the Medicare manual. I would suspect an LCD would either be an interpretive rule or a general guideline, and I honestly don't know whether or not a list of LCDs or where they might be found is or is not published in the Federal Register. But, again, the claim before the Court is not about any LCD. The only claim before the Court is that Section 5.1 and 5.4 of the Program Integrity Manual constitute legislative rules, that they are invalid because they weren't promulgated pursuant to notice and comment. And the Program Integrity Manual is listed in the Federal Register, I'm fairly certain. And the provisions at issue are clearly interpretive rules. They set forth the Secretary's interpretation of what the reasonable and necessary provision of the statute means. I ask Ms. Hart, as you recall, whether these LCDs, or at least whatever it is that she's complaining about, are a change in policy. And she seemed to think that, yes, they were. What's your response? Your Honor, I'm not quite sure what Ms. Hart is referring to. On the one hand, she seems to be referring to the use of LCDs as a general matter, the fact that contractors, rather than reviewing all of the millions of Medicare claims on a claim-by-claim basis, can adopt these local coverage determinations so that some of the claims can be automatically granted or denied. In that respect, she claims that that was a change in policy in 1994. I think it's not quite so simple. My understanding is that Medicare was using something called utilization screens before that. That grew into LCDs. But that's really irrelevant to the question before the Court. Even if it were a change in policies to use these local coverage determinations, so what? The agency is certainly allowed, as a matter of its own internal operations, to say rather than determining these millions of claims on a case-by-case basis, we are going to determine them using these local rules that tell us, in certain circumstances, that claims will or will not be granted. But harm would occur if these were required to be published and subject to public comment, et cetera. Your Honor, I think, of course, if the Court agreed with plaintiffs that these were legislative rules, then the PIM provisions would be deemed invalid. And then the Secretary would have a choice. He could either pursue notice and comment rulemaking with respect to the criteria, and that would be administratively burdensome. I suspect that the notice would solicit many, many, many comments, and the Secretary has chosen not to do so to date. And should this Court rule for plaintiffs, the Secretary, of course, could choose not to do so in the future. The result, I submit, would not be a benefit to plaintiffs' clients or to the public, because the Secretary could say, you know what, I don't want to publish criteria pursuant to notice and comment. That's too administratively burdensome. I will delete those provisions from the Program Integrity Manual, and I will have contractors do one of two things. A, they can promulgate local coverage determinations based on the statute's reasonable and necessary language. But the contractor does this, not the government. The contractor does this pursuant to the criteria set forth in the manual. But if we take out that criteria, and there's no requirement that the Secretary repromulgate through notice and comment, he could say, I don't want to do it. You then have either contractors issuing LCDs based on nothing more than the reasonable and necessary language, which means you'll have less consistency in the LCDs, both within a contractor and among contractor. You'll have less transparency to the whole system, because reasonable and necessary tells the community that's commenting on LCDs a little less than the criteria set forth in the manual. Or alternatively, the Secretary would say, I'm going to get rid of the whole LCD system. Let's have an inefficient system, a non-transparent system, where all these contractors, as authorized by the statute, will determine the millions of claims they get on a case-by-case basis based on nothing more than the bare, reasonable, and necessary language of the statute. I submit that would make the system less transparent, less efficient, and less consistent, and I would point the Court to the D.C. Circuit's opinion in American Mining Congress, where they talk about legislative rules and interpretive rules. And we discussed this in our brief. And the D.C. Circuit talks about the danger of interpreting the interpretive rule exception of the APA too narrowly, because what it will do, the Court says, is drive agencies into an ad hoc decision-making process. And that's exactly what the Secretary might decide to do here. Let's determine these millions of claims on a case-by-case basis without any interpretive criteria. That means you have less notice than you do now about the basis for the agency's contractors' decisions. I'd like to turn just briefly to the substantive legal standard at issue here under both the APA Act and the Medicare Act. Under the APA, as this Court held in Hemp Industries, in order to be subject to notice and comment, a rule has to be legislative. That is, it must have the force and effect of law. And as the Supreme Court told us 25 years ago, in order to have the force of law, something has to be an exercise of legislative power. And I quote, this is from Chrysler Corporation v. Brown, that an agency regulation is, quote, substantive, unquote, however, does not by itself give it the, quote, force and effect of law, end quote. The legislative power of the United States is vested in the Congress, and the exercise of quasi-legislative authority by governmental departments of agencies must be rooted in a grant of such power by the Congress. And it is for that reason that the focus on whether a rule is legislative, is substantive, and subject to notice and comment, is really a focus on whether or not it is an exercise of delegated legislative authority by the agency. And that's what Hemp Industries talks about. It says you might have delegated legislative authority where Congress expressly or implicitly requires it. It says we're going to establish a Medicare program and provide people coverage, and we're going to tell the secretary to decide the criteria by which he or she will determine whether claims are covered. Well, absent some criteria, there's no legislative basis for deciding claims then. And any rule the secretary would issue would be an exercise of the delegated legislative authority from Congress. That's not what happened here, of course. Congress itself said reasonable and necessary claims. That's the governing legal standard. The PIM provisions which interpret that phrase don't have the force and effect of law. Second circumstance identified in Hemp Industries is an agency has broad delegated legislative powers, and the secretary here has that power. Congress has said you can make whatever regulations you deem appropriate. In that circumstance, the secretary could choose to pursue notice and comment rulemaking. He could have promulgated these criteria as a regulation. The result would be that when a claimant came to court saying my claim for benefits was denied, the court would have to apply those criteria. The court would say, well, was the service safe and effective? Was it not experimental, et cetera, all the criteria in the manual, unless it found that the criteria were arbitrary and capricious after giving them Chevron deference. That would be a benefit to the secretary. His criteria would have the force of law. The secretary said, I'm not going to do that. I'm going to use just you – I'm not exercising delegated legislative authority. And today, if a claimant appeals a denial of benefits to a court, the court has to ask, are – was this claim for reasonable and necessary items or services? Doesn't apply the criteria in the PIN because they don't have the force of law. Finally, the third factor identified in Hemp Industries relates to amending a legislative rule. And with all due respect to plaintiffs, if you look at the provisions in the CFR that they claim have been amended by this, there's nothing there. Notably, they haven't identified a single regulation that they claim has been amended. The provisions at issue talk about appealing an initial determination, seeking review and reconsideration, moving on to an ALJ, what are the time limits, who do you send your thing to, what are the amount in controversy. They don't talk about the processes by which contractors are to decide claims or the criteria. There is no legislative regulation that the PIN criteria amend. Finally, with respect to the Medicare Act and whether or not it applies a different standard than the APA, the subheading of Section 1395HH, subparagraph A, says, ineffectiveness of substantive rules promulgated – not promulgated by regulation, mimicking, again, the language of the APA, substantive rules. The language of the Act talks about a substantive legal standard, again, mimicking the APA. And it contains an exception for interpretative rules, using the exact same language as the APA, which exempts interpretative rules, the same awkward phraseology. Plaintiffs have not offered any basis upon which to distinguish this different standard that they allege applies under the Medicare Act. What I submit constitutes an interpretative rule under the APA so that it's not subject to notice and comment, but does not constitute an interpretative rule under 1395HHC under the Medicare Act. All that plaintiffs can offer is that in close cases you should require notice and comment. First, this is not a close case. And second, that is not a workable legal standard by which to apply the APA's requirements. I see that my time is up. If there are no further questions, I ask that the district court's decision be affirmed. Thank you, counsel. Your time has expired. Ms. Hart. I would like to use my time to compare the coverage provisions of the Medicare statute with the coverage provisions in the challenged criteria for local coverage rules. And I believe the court will clearly see how much more restrictive the coverage rule criteria are. The Medicare statute broadly spells out a list of health services that are covered, and these are called entitlements in the Medicare statute. Hospital services, home health services, physician services, ambulance services, that's just a few of the many services that are articulated as being entitlements. It limits these services only by saying that coverage will be excluded if the services are not reasonable and necessary. That's it. That's what's in the statute. It's also what's in the regulation that my colleague doesn't believe is applicable, and if he's right, I think it is applicable, the regulations concerning claims determinations. You then fall back and look at whether the statute is offended in applying the tests for promulgation, and it clearly is because this is what the criteria for local coverage rules that the secretary has mandated provide. In order to be covered, a service must be safe and effective, not experimental or investigational, appropriate, including a number of additional requirements of a duration and frequency considered appropriate, in accordance with accepted standards of medical practice, furnished in a setting appropriate to the patient's needs, ordered or furnished by qualified medical personnel, meet but do not exceed the patient's medical need, at least as beneficial as medically appropriate alternatives. And particularly, this is the most clearly offensive provision, the secretary has a least costly alternative requirement that applies mandatorily to durable medical equipment and at the option of the private contractor to all other services. If the contractor believes that there is an alternative treatment to the one that the physician has prescribed that costs less, the carrier can, contractor can choose to simply reimburse at that lower rate, rather than reimbursing for the service that was provided. In addition, the burden of proof has been switched. In the Medicare statute and in the original regulations about how claims would be determined, if a physician prescribed a service, it would be covered unless it was not reasonable and necessary. However, here, for all of these rules that we're talking about, in order for the rules to be, in order for a service to be covered, this whole list of criteria has to be met. So, in other words, a service has to be proven to meet these criteria, rather than being proven not to meet the criteria. They clearly add enormous restrictions to coverage that go far beyond the not reasonable and necessary exclusion in the Medicare statute. And the plaintiffs' own cases demonstrate this as well, because when they went far enough to free themselves from the local coverage rule and acted pursuant to these criteria, they got coverage. The language in the manual provision setting out the criteria is mandatory, not permissive. It uses words like must and shall with respect to application of the criteria. And as we said before, they are binding up to the ALJ stage of appeal. And unfortunately, very, very few Medicare beneficiaries, as you can understand, given their age and condition, actually pursue a Medicare claim that far. So they are bound by the rules in actual reality. Thank you very much, counsel. Your time has expired. The case just argued will be submitted for decision, and the Court will adjourn. Thank you. Thank you.
judges: O'scannlain, Siler , Hawkins